CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 21 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANDRE HUBBARD, <br> Plaintiff, | Civil Action No. 7:07cv00021 |
| v. | MEMORANDUM OPINION |
| B. CALTON, et al., <br> Defendants. | By: Hon. Glen E. Conrad <br> United States District Judge |

Proceeding pro se, plaintiff Andre Hubbard brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343.[1] Plaintiff seeks monetary damages from two correctional officers for claims arising out of an incident on July 16, 2005, at Wallens Ridge State Prison ("WRSP"). Plaintiff's motion for a preliminary injunction was denied by the court by Memorandum Opinion and Order entered July 5, 2007. The case is currently before the court on defendants' motion for summary judgment, which is ripe for disposition.[2] For the reasons that follow, the court will deny defendants' motion as to plaintiff's excessive force claim and refer the matter to United States Magistrate Judge Pamela Meade Sargent for further factual development.

### I. Factual Background

Plaintiff's complaint, filed on January 19, 2007, alleges an excessive force claim, in violation of the Eighth Amendment, against WRSP Correctional Officers, B. Calton ("Calton") and B. McCray ("McCray"), arising out of an incident on July 16, 2005, at approximately 4:10 p.m. Specifically, plaintiff alleges that, as the inmates in his housing unit were progressing to the dining hall through the WRSP

---

[1] Plaintiff appears to be attempting to bring a "class action" suit in his complaint. However, class certification is not proper under Federal Rule of Civil Procedure 23 because plaintiff has identified no determinative critical issue common to any other plaintiff. Stott v. Haworth, 916 F.2d 134, 145 (4th Cir. 1990). Additionally, a class should not be certified when a pro se litigant seeks to represent a class unless he can "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975).

[2] On June 26, 2007, defendant Calton joined defendant McCray's May 11, 2007 motion for summary judgment.

Building C Recreation Yard, a fight in the kitchen caused his group to be ordered to return to their housing unit. Plaintiff contends that a K-9 Correctional Officer stated, "[T]urn around and go back to your housing unit like cattle." (Compl. at 10.) Plaintiff alleges that, when he requested the name of the K-9 Correctional Officer in order to file a complaint stemming from the officer's "unprofessional statement," he was "pulled out of line" by Correctional Officer Givens ("Givens") and forced to "get on his knees." (Compl. at 11.) Plaintiff claims that he was "shackled with handcuffs, pushed to the ground[,] and jumped on by [Calton and McCray,] who placed there [sic] knees in plaintiff's neck and back." (Compl. at 6.) Plaintiff alleges that the restraints were "too tight" and that the officers, who each weighed over 250 pounds, "smashed his chin against the concrete." (Compl. at 7-8.)[3] Calton, while pinning plaintiff to the ground with his knee in plaintiff's neck and back, allegedly stated: "This kind of action makes my day"; "I never liked your ass anyway"; "I've been waiting to do this to you"; and "This will teach you to file a grievance against our officers." (Compl. at 5.) Plaintiff further alleges that McCray, while pinning plaintiff to the ground with his knee in plaintiff's back stated: "This is fun"; "I love kicking your ass"; "This is the best part of my job"; "I've been waiting to make an example out of you anyway"; and "This will teach you to file a grievance against our officers." (Compl. at 6.) Plaintiff was then "forced to walk at a very fast pace" which resulted in the "loss of blood circulation[,] cramping, loss of oxygen, and removal of [the] skin from plaintiff's ankles." (Compl. at 8.)

After plaintiff was escorted to the segregation housing unit, he was examined by the medical staff and given three band-aids and some cream for his ankles. Plaintiff alleges that his complaints of pain "shooting though [his] neck and back" were ignored by the medical staff at that time.[4] Plaintiff contends

---

[3] The court notes that in one of plaintiff's grievances he contends that his face was pushed in the mud.

[4] To the extent that plaintiff complains of deliberate indifference on the part of the WRSP medical staff, based upon their alleged failure to address his back and neck injuries on July 16, 2005, the claims fail. The court first notes that plaintiff does not allege that either of the two defendants were involved in his medical treatment. A complaint that lacks specific factual allegations concerning a defendant's personal involvement should be
(continued...)

that, because of this incident, he currently suffers from permanent back damage, specifically a "wedged compressed fracture involving the L.1 vertebra." (Compl. at 6.)

Plaintiff further alleges that, "as a result" of the July 16, 2005 incident, he received "offense code[s]" for "threatening bodily harm" to an officer for allegedly stating to the K-9 Officer, "I can still kick your ass C/O Mexican, and your Dog," and "attempting to commit simple assault" for allegedly attempting to "headbutt" Calton while being escorted to the segregation unit. (Compl. at 13.) Plaintiff points to the fact that his convictions of the two charges resulted in "an increase in his security level and segregation time" as support for his claims of injury. (Compl. at 23.)

Defendants contend that they acted in a professional manner during the incident on July 16, 2005, and used only necessary force against plaintiff. According to their affidavits, McCray and Calton allege that they were called to escort plaintiff to segregation because of "inappropriate comments he made to staff." (McCray's Mot. Summ. J., Ex. I at 1; Calton's Mot. Summ. J., Ex. III at 2.) McCray and Calton explain that plaintiff was already fully restrained in handcuffs and leg irons when they arrived and that he was being "verbally disruptive." (McCray's Mot. Summ. J., Ex. I at 1; Calton's Mot. Summ. J., Ex. III at 2.) As Calton and McCray attempted to escort plaintiff to a segregation cell, plaintiff continued his disruptive behavior by shouting obscenities and became "aggressive" by attempting to headbutt Calton. (McCray's Mot. Summ. J., Ex. I at 2; Calton's Mot. Summ. J., Ex. III at 2.) The officers allege that they placed plaintiff on the ground until he calmed down. The officers subsequently assisted plaintiff to his

---

[4](...continued)
dismissed. Liffiton v. Keuker, 850 F.2d 73, 76 (2d Cir. 1988). Furthermore, in order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Claims regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. Plaintiff fails to establish deliberate indifference as medical records reveal that plaintiff was examined on numerous occasions in response to his alleged injuries, including the day of the incident. The records further reveal that plaintiff did not even allege any neck or back pain until five days after the altercation. Accordingly, any claims of medical deliberate indifference are not cognizable.

feet, but he again attempted to assault Calton. Plaintiff was placed on the ground a second time and remained there until he calmed down. He was then escorted to the segregation unit without further incident. Both officers deny that they made any of the alleged inappropriate statements.

Defendants also provide evidence in the form of an affidavit from Sergeant McQueen ("McQueen"), WRSP Institutional Investigator. McQueen explains that plaintiff received a disciplinary charge for threatening bodily harm to an officer on July 16, 2005. On that date Officer Givens heard plaintiff state, "Who is that K-9 Officer? He will not talk to me like that, I'll kill his ass." (McCray's Mot. Summ. J., Ex. II at 1.) On July 22, 2005, plaintiff was found guilty of the offense. Plaintiff also received an additional disciplinary charge for attempting to commit simple assault upon a non-inmate when he "turned his head and lunged toward Officer Calton as if he were attempting to headbutt him." (McCray's Mot. Summ. J., Ex. II at 2.) On July 27, 2005, plaintiff was found guilty of the latter offense. McQueen states that both he and Sergeant Still[5] reviewed the relevant yard camera tapes and found no evidence to substantiate plaintiff's allegations.

Defendants further submit the affidavit of William D. Henceroth, II, M.D., Virginia Department of Corrections ("VDOC") contract physician, in support of their motion for summary judgment. According to Dr. Henceroth's affidavit, after reviewing plaintiff's medical records, it is his opinion that plaintiff sustained the compression fracture of his L1 vertebra at the time that he jumped out of the third story of another institution, well-before his transfer into the VDOC. Henceroth contends that, after reviewing plaintiff's x-rays taken on August 3, 2005, he determined that the compression fracture was of indeterminate age and not acute. He also notes that plaintiff did not complain of any back pain until July 21, 2005, five days after the altercation. Accordingly, Dr. Henceroth is of the opinion that plaintiff merely

---

[5] McQueen explains that Still was formerly a WRSP Lieutenant and prepared the Investigative Report regarding the July 16, 2005 incident. The report determined that it appeared that plaintiff turned to his left in the direction of Calton but that it did not appear that he was falling because the officers did not show any indication of being pulled off balance. Instead, it appeared as if the officers were guiding him to the ground.

4

"sustained a mild strain of his back that would have cleared up in three-weeks time." (Defs' Mot. Incorporate Aff., Part I at 4.) He believes to a degree of medical certainty that plaintiff's current back pain is not related to any altercation with Correctional Officers, but is a "chronic pain" that stems from a preexisting condition.[6]

## II. Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at at 256-57.

---

[6] Plaintiff contends that Dr. Henceroth's opinion is based on a "fabricated story" and that there is no record of an incident where he jumped out of the third story of the Lynchburg Regional Jail. He requests that the motion to incorporate Dr. Henceroth's affidavit should be denied. However, the court notes that plaintiff's medical records, while difficult to read, indicate that on December 18, 2006, he informed the WRSP Unit Physician that, prior to his incarceration with the VDOC, he fractured both ankles after he jumped from a third story building while he was at an unspecified jail. The physician's notes indicate that the compression fracture was sustained at that time. Accordingly, defendants' motion to incorporate Dr. Henceroth's affidavit will be granted and considered as a part of the record.

5

Case 7:07-cv-00021-GEC-PMS  Document 41  Filed 11/21/07  Page 5 of 7  Pageid#: 431

## III. Discussion

As previously stated, plaintiff alleges that Calton and McCray used excessive force against him on July 16, 2005, in violation of the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). To prevail on an excessive force claim, an inmate must establish that prison officials acted with a sufficiently culpable state of mind, and that the harm inflicted on the inmate was sufficiently serious. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that his harm rises to the level of a constitutional violation, a plaintiff must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994).[7] An inmate must also satisfy a subjective component by showing that the force was applied "maliciously and sadistically for the purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-21 (1986); see also Williams, 77 F.3d at 761. Further, not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. See Hudson, 503 U.S. at 9 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The court has reviewed the relevant DVD of the C recreation yard on the date and time in question and is unable to determine whether Officers Calton and McCray acted appropriately in response to

---

[7] In Norman, the United States Court of Appeals for the Fourth Circuit recognized that "there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain." Norman, 25 F.3d at 1263. In such circumstances, "the force will be 'of a sort repugnant to the conscience of mankind,' and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury." Id. (quoting Hudson, 503 U.S. at 8). In other words, the inmate must show, objectively, that the use of force was contrary to contemporary standards of decency and that he suffered more than de minimis pain or injury. See Hudson, 503 U.S. at 7, 9. Inasmuch as some abuses can leave no lasting physical evidence of injury, the courts recognize that "the objective component can be met by 'the pain itself,' even if the inmate suffers no 'enduring injury.'" Williams, 77 F.3d at 762 (quoting Norman, 25 F.3d 1259, 1264 n. 4).

6

plaintiff's allegedly disruptive behavior in the recreation yard. Thus, viewing the facts in the light most favorable to plaintiff, the court finds that there are genuine issues of material fact as to whether the officers used excessive force and whether plaintiff's back injury was a result of the July 16, 2005 incident.[8]

## IV. Conclusion

Based on the foregoing, the court will deny defendants' motion for summary judgment and refer the matter to United States Magistrate Judge Pamela Meade Sargent for an evidentiary hearing.

ENTER: This 21st day of November, 2007.

*/s/ Jack Conrad*
United States District Judge

---

[8] On May 30, 2007, plaintiff filed additional evidence alleging that the officers at WRSP are racist and that plaintiff has been threatened numerous times because of his pending lawsuit against the defendants. Specifically, plaintiff alleges that on April 12, 2007, an unspecified officer threatened to plant a knife in plaintiff's cell. Plaintiff alleges that he found a six-inch steel knife in his cell two days later. Plaintiff does not allege that either of the two defendants in this case had any knowledge of the April 12, 2007 incident, much less that they were personally involved in the placement of the knife or the general harassment. A complaint that lacks specific factual allegations concerning a defendant's personal involvement should be dismissed. Liffiton v. Keuker, 850 F.2d 73, 76 (2d Cir. 1988). Accordingly, plaintiff's allegation that defendants are threatening him in retaliation for filing this lawsuit will not be considered by this court. Regardless, to the extent that plaintiff's allegation can be construed as a claim of retaliation, it fails. It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. See American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. White v. White, 886 F.2d 271 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism"). The court first notes that, with the exception of the April 12, 2007 incident, plaintiff makes only conclusory statements that WRSP officers are verbally threatening and harassing him in retaliation for filing this lawsuit. Regardless, verbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in Moody v. Grove, No. 89-6650, 1989 WL 107004, at *1 (4th Cir. Sept. 19, 1989); see also Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation"). Furthermore, plaintiff supplies no factual support for his claim that a knife was planted in his cell such as identifying information of the threatening officer or any disciplinary consequences of the alleged incident. Moreover, the court finds plaintiff's credibility to be in question as the plaintiff made a similar allegation in his motion for a preliminary injunction which this court denied by order entered July 5, 2007. In that motion plaintiff alleged that he discovered a weapon, this time a "6' lightning rod," in his cell on April 29, 2007.

7